UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


CLARCOR, INC.,                        ]
                                      ]
    Plaintiff,                    ]
                                      ]
v.                                    ]          No. 3:10-00336
                                      ]          JUDGE HAYNES
                                      ]
COLUMBIA CASUALTY COMPANY,            ]
                                      ]
    Defendant.                    ]


## M E M O R A N D U M

    Plaintiff, Clarcor, Inc., a Delaware corporation with its principal place of business in

Tennessee, filed this action under 28 U.S.C. § 1332, the federal diversity statute, against the

Defendant, Columbia Casualty Company, an insurance company organized and existing under the

laws of Illinois with its principal place of business in Illinois. Plaintiff asserts claims of breach of

contract, violation of the Tennessee Consumer Protection Act, ("TCPA"), Tenn. Code Ann. §§ 47-

18-101 et seq., and violation of the Tennessee Bad Faith Act Statute, Tenn. Code Ann. §§ 56-7-105

et seq. Plaintiff seeks declaratory judgment on whether under Defendant's insurance policy, the

Defendant owed a duty to defend and indemnify Plaintiff under the policy for claims in a prior action

against Plaintiff.

    Before the Court are Plaintiff's motion for partial summary judgment (Docket Entry No. 14)

and Defendant's cross motion for summary judgment (Docket Entry No. 28). In its motion, Plaintiff

contends that some of the claims and allegations in 3M's complaint fall within the "personal and

advertising injury" coverage in Defendant's policy. Plaintiff also contends that Defendant has a duty

to indemnify it for the damages that Plaintiff will have to pay in connection with its settlement with 3M. In its motion, Defendant argues that 3M's complaint only contains claims for false advertising under state and federal law and Plaintiff erroneously recharacterizes 3M's claims and allegations in an effort to qualify under the policy's "personal and advertising injury" coverage. Further, Defendant contends that Plaintiff's claims are also barred by the "failure to conform" exclusion in the policy and 3M's complaint does not satisfy the terms of the "personal and advertising injury" coverage.

For the reasons set forth below, the Court concludes that Defendant's motion for summary judgment should be granted because the allegations and claims in the underlying action did not state claims covered under the Defendant's policy. The claims in the prior action were excluded under the failure to conform exclusion in the Defendant's policy.

## I. FINDINGS OF FACT[1]

Plaintiff obtained a commercial general liability insurance policy from the Defendant, number 0223304983, with effective dates from December 1, 2008 to December 1, 2009 (the "Policy"). (Docket Entry No. 37, Defendant's Response to Plaintiff's Statement of Undisputed Facts, at ¶ 1). This Policy states, in relevant part, under **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**, that:

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. Civ. P. 56(d).

## 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. [...]

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered as advertisement.

* * *

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d. Oral or written publication, in any manner, of material that . . . or disparages a person's or organization's goods, products or services;**

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f. The use of another's advertising idea in your "advertisement"; or**

**g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".**

Id. at ¶ 3 (emphasis added by Plaintiff).

In addition, the policy contains the following relevant exclusion claim:

**(g)     Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

(Docket Entry No. 14, Attachment 2 at 8).

On August 14, 2009, 3M Company ("3M") filed an action against a Clarcor subsidiary in the United States District Court for the Eastern District of Virginia. 3M Company v. Clarcor Air Filtration Prods., Inc., 1:09-cv-00909. (Docket Entry No. 37 at ¶ 4). 3M summarized its claim in its complaint:

Through this Complaint, brought under the false advertising provisions of the federal Lanham Act and the Virginia False Advertising Statute, 3M seeks a preliminary and permanent injunction requiring Purolator to stop its false claims, to cease and desist from its predatory, false advertising campaign, and to pay damages to 3M based on these violations.

(Docket Entry No. 14, Attachment 3 at 2). 3M's complaint specifically alleged, in pertinent part, as follows:

¶ 17. Clarcor designed the packaging and advertising for its new line of Purolator filters to resemble that of 3M's Filtrete line in several key aspects, in an evident scheme to parasitize the excellent reputation of 3M's Filtrete products. Specific examples of the ways in which Clarcor is attempting to accomplish this, by using various false and misleading advertising claims, are set forth in detail below.

4

*** 

## CLARCOR'S FALSE AND MISLEADING ADVERTISING CLAIMS

### False Comparative Performance Claims

¶ 25. In furtherance of its predatory scheme to take retail shelf space and market share away from 3M, Clarcor designed the packaging for Purolator products to convey the false and misleading claims that Purolator filters perform equally to, if not better than, 3M's Filtrete filters. Several aspects of the Purolator package design create this false impression, including the numerical performance claims of "overall filtration efficiency," the claimed "respiratory protection factor," and similarities in color.

¶ 26. For example, one of 3M's line of Filtrete filters is called the "Ultra Allergen" and is sold in a purple package that labels the filter as "90% effective at attracting and capturing large airborne allergens like: pollen, mold spores and dust mite debris." ...

**¶ 27. Clarcor has recently launched its own purple "Allergen" filter, which it claims on the package provides "97% *Overall* Filtration Efficiency" (emphasis added) [emphasis in complaint] ...**

¶ 28. Consumers seeing these competing package claims will undoubtedly be led to believe that the Purolator purple filter is even more efficient at removing particles from the air than the 3M Ultra Allergen filter. The Purolator filter is claimed to remove 97% of all particles ("97% Overall Filtration Efficiency"). By contrast, the 3M filter is labeled to remove only 90% of large particles ("90% effective at attracting and capturing large airborne allergens. . . ."). **As set forth below, Purolator's claim of 97% Overall Filtration Efficiency is not only literally false, it creates a false impression of superiority to 3M's Ultra Allergen filter. Both false claims are conclusively disproven by testing at leading independent labs.**

¶ 29. Clarcor's misleading claims of similarity between the 3M and Purolator filters do not stop there. As shown in Figure 1 above, 3M labels its filters with a Microparticle Performance Rating ("MPR"), a metric designed by 3M to inform consumers how well each filter in its Filtrete product line performs relative to other Filtrete filters in the line. For example, 3M's purple Filtrete "Ultra Allergen" filter is labeled with an MPR of 1250. 3M's red Filtrete "Micro Allergen" filter is labeled with an MPR of 1000. Other filters in the Filtrete line are labeled with MPRs ranging from 300 to 2200.

¶ 30. It is no coincidence that Clarcor labels its Purolator purple Allergen filter with what is plainly intended to be a comparable numerical performance value. Although Clarcor calls its metric the "Respiratory Protection Factor" ("RPF"), it chose to assign the very same number – 1250 – to its purple Allergen filter that 3M used in connection with its purple Filtrete filter, thus, directly copying 3M's key MPR performance metric for the analogous product. Purolator's adoption of the exact same number used by 3M on its own purple package leads both retailers and consumers to believe the Purolator product filters the air as well as the 3M product.

¶ 31. Finally, Clarcor intentionally adopted the color purple for its Purolator Allergen filter. 3M's Ultra Allergen filter package exemplifies 3M's use of specific colors to convey the various efficiency levels of 3M's filters. Clarcor's choice of purple, along with the false claim of 97% Overall Filtration Efficiency and the RPF of 1250 collectively imply to consumers that the purple Purolator filter is equal to or better than the purple 3M filter, and that consumers switching to Purolator will experience no decline in performance if they buy the Purolator filter instead of the 3M filter.

¶ 32. **Purolator's monadic and comparative performance claims are false.** Testing of both brands of filters by two leading, independent testing laboratories, proves that Purolator's purple Allergen filters are significantly inferior to Filtrete's purple Ultra Allergen filters in their ability to filter all measured sizes of particles from the air. In particular, the Purolator filters perform far worse in their ability to filter the smallest particles, such as smoke and bacteria, which are important contributors to poor indoor air quality. Thus, **Purolator's implied comparative performance claims to 3M Filtrete are false. Testing also demonstrates that Purolator's claims of "Overall Filtration Efficiency" are literally false, standing alone.**

¶ 33. **Clarcor's false implied claims are not limited to the purple Purolator filter, but also apply to other Purolator products.** Specifically, 3M's red Filtrete filter, called the "Micro Allergen," is labeled to have an MPR of 1000. Purolator offers a red filter as well, labeled with an RPF of 1050, and as having an Overall Filtration Efficiency of 95%. In this manner the packaging and advertising for the red Purolator filter also mimics aspects of the packaging and claims for the red Filtrete filters to create the false impression of superior performance to Filtrete. As with the purple filters, testing of both brands of red filters by two leading, independent testing laboratories proves that Purolator's red filters are not superior to Filtrete's red Micro Allergen filters in their ability to filter all measured sizes of particles from the air.

¶ 34. Purolator's use of Filtrete's color scheme, RPF ratings similar to Filtrete's MPR ratings, and overstated Overall Filtration Efficiency claims are factors likely to be material to consumers on the market for home HVAC filters. Upon information and

belief, consumers select their home HVAC filters based on the color, RPF or MPR rating, and Overall Filtration Efficiency claims, upon other factors.

* * *

¶ 63. **The false and misleading advertising claims described in paragraphs 1-62 above will, if allowed to continue, profoundly hurt 3M's sales of home HVAC filters and irreparably harm its market share and reputation in the category.** Filtrete filters have already been removed from shelves at some Lowe's stores. If Clarcor's scheme is successful, 3M filters may be removed from many more Lowe's stores in the near future. Once 3M loses its presence on store shelves in this manner, it will be highly difficult, if not impossible for 3M to regain.

* * *

¶ 65. As a direct and proximate result of all of Clarcor's false claims on its Purolator packaging and advertising, as detailed in paragraphs 1 through 62 above, 3M has suffered harm, including lost sales and loss of market share, due to retail stores removing Filtrete products from their shelves to make room for Purolator filters, has lost goodwill in the marketplace, and has suffered damage in reputation in the marketplace. Unless this Court enjoins Clarcor from continuing its false advertising, 3M will continue to suffer further irreparable harm in the future. 3M, therefore, seeks an immediate stop to Clarcor's false claims, through withdrawal of the offending packaging from the market.

Id. at 5, 7-11, 19-20, Attachment 3 (emphasis added).  For relief, 3M sought, among other things,

D. Orders enjoining Clarcor from copying elements of the packaging and design of Filtrete filters packaging in a manner that reasonably suggests or implies that the two products are equivalent in performance, or that the Purolator filter is superior to the 3M filter, when they are not . . . .

E. Orders enjoining Clarcor from disseminating or causing the dissemination of the following false claims in any packaging, advertising, radio or television commercials, or other promotional activities or materials for its Purolator filters . . . [.]

Id. at 23.

Plaintiff timely requested insurance coverage for 3M's action that the Defendant acknowledged on August 21, 2009. (Docket Entry No. 37 at ¶ 6).  On October 9, 2009, 3M filed a motion for preliminary injunction, asserting the "literally false" standard for Plaintiff's alleged false

advertising. Id. at ¶¶ 7-8. The district court denied 3M's motion for preliminary injunction on its "literally false" theory and concluded that 3M had not shown a likelihood to succeed on "its literal falsity claim." Id. at ¶¶ 9-10; Docket Entry No. 14, attachment No. 5 at p. 68. The district court stated:

> The Court cannot conclude that there's a likelihood of success in proving a lack of any reliable data to support the MERV ratings with respect to either the blue or the red. It would require more information than the Court has before it, including the nature of the tests, conditions under which those tests were conducted, and basically to make a scientific finding as to the results of each test.
> When that's compared with the data that was -- the testing that Clarcor itself conducted is corroborated, at least to a certain extent, by the 3M testing, the Court must conclude that 3M has not made a clear showing of likelihood of succe[ss] on . . . its literal falsity claim.

(Docket Entry No. 14 at Attachment No. 5 at p. 68).

On October 16, 2009, Defendant notified Plaintiff of its intention to disclaim any obligation to defend or indemnify Clarcor in connection with the 3M action. (Docket Entry No. 14 at Attachment 7). Defendant cited, among others, Plaintiff's policy's provisions on its failure to conform exclusion. Id. at 12. Plaintiff responded with letters dated October 30, 2009, and December 23, 2009, disputing Defendant's position. Id., Attachments 8 and 10. By letters dated November 10, 2009, and January 28, 2009, the Defendant reaffirmed its denial of coverage. Id., Attachments 9 and 11.

Plaintiff defended the 3M action at its cost and settled the 3M action by entering into a confidential settlement agreement with 3M. (Docket Entry No. 37 at ¶ 12). The settlement agreement did not require Clarcor to pay damages to a third party. Id. at ¶ 13; (Docket Entry No. 16, Settlement Agreement). Clarcor, however, must, among other things, package and repackage certain of its products and devise a new numbering or rating system for its filters' effectiveness. Id.

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby, 477 U.S. at 251-52).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for

the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.

It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted). As the Sixth Circuit stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1.     Complex cases are not necessarily inappropriate for summary judgment.

2.     Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.     The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4.     This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.     A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6.     As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.     The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an

element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.      The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.      The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.      The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations and footnotes omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

In this diversity action, the Court applies the substantive law of the forum state, including the forum's choice of law rules. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Without a choice-of-law provision in the policy, the Court concludes that Tennessee law applies to this action where the insurance policy was issued and delivered in Tennessee. Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc., 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998). Tennessee courts

construe any ambiguities in an insurance policy in favor of the insured. <u>Griffin v. Shelter Mut. Ins.</u> <u>Co.</u>, 18 S.W.3d 195, 200 (Tenn. 2000). Yet, if the terms of the policy are clear, the Court enforces insurance contracts "according to their plain terms" with the language construed in its "plain, ordinary and popular sense." <u>Id</u>. In a word, Tennessee courts do not create a new insurance contract for the parties. <u>Id</u>.

"An insurer's duty to defend is separate and distinct from the insurer's obligation to pay claims under the policy. The duty to defend is broader than the duty to indemnify." <u>Id</u>. (citation omitted). "In any event, the pleading test for determination of the duty to defend is based exclusively on the facts as alleged rather than on the facts as they actually are. . . ." <u>St. Paul Fire and Marine Ins.</u> <u>Co. v. Torpoco</u>, 879 S.W.2d 831, 835 (Tenn. 1994) (citation omitted). The "plaintiff has the burden of proving that its damages are covered by the terms of the policy; the defendant, in turn, must establish the applicability of any exclusions on which it relies." <u>Charles Hampton's A-1 Signs, Inc.</u> <u>v. Am. States Ins. Co.</u>, 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006).

Under Tennessee law, the Court's inquiry is confined to the allegations in the complaint in the cited action. <u>Drexel Chem. Co. v. Bituminous Ins. Co.</u>, 933 S.W.2d 471 (Tenn. Ct. App. 1996).

> If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy. An insurer may not properly refuse to defend an action against its insured unless "it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage."

<u>Id</u>. at 480 (citations omitted).

In analyzing these coverage claims, Tennessee law also considers the gravamen of the factual allegations and claims.

"It would be inappropriate for us to conduct a word-by-word analysis of the complaint, patching one word from one paragraph to another word from another paragraph, because such a review might very well cause us to find meaning where none otherwise existed. The proper extent of our review simply requires us to focus attention on the facts alleged as they appear in the complaint to determine if they could even potentially be covered by the [insurer]."

Insura Property and Cas. Ins. Co. v. Ashe, No. M2002-00374-COA-R3-CV, 2003 WL 253255, at *4 (6th Cir. Feb. 6, 2003) (citation omitted).

Under the policy at issue, the Defendant "will have the right and duty to defend [Plaintiff] against any 'suit' seeking [personal and advertising injury liability] damages." Thus, Defendant's duty was triggered (1) if the 3M litigation were a "suit" seeking "damages" (2) the action was for "personal and advertising injury liability", and (3) coverage was not barred by the policy's exclusion provision. Defendant does not contest that the 3M action constituted a "suit" under the policy. Defendant contends that 3M's claims were only for false advertising that is not covered under the policy. Plaintiff contends that the 3M complaint alleged a "personal and advertising injury" claim of disparagement, "use of another's advertising idea in your 'advertisement,'" and either trade dress or slogan infringement. Plaintiff does not dispute that false advertising claims are not covered under the policy.

As a general observation and consistent with principles in Insura, the Court concludes that 3M's claims were for false advertising. 3M's complaint asserted claims for false advertising under the federal Lanham Act and the Virginia False Advertising statute. 3M sought preliminary and permanent injunctive relief requiring Plaintiff to cease and desist from Plaintiff's alleged predatory, false advertising campaign, and to pay damages to 3M based on those violations. (Docket Entry No. 14, Attachment 3 at 2). The elements of a Lanham Act claim for false advertising are that: (1) the

defendant made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.  Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc., 270 F.3d 298, 323(6th Cir. 2001).

The 3M complaint contains numerous headings and sub-headings  referring to Clarcor's false advertising.  The principal heading described "CLARCOR'S FALSE AND MISLEADING ADVERTISING CLAIMS" and the sub-headings were: "False Comparative Performance Claims;" "False 'Overal Filtration Efficiency' Claims;" "False Claims of Certification or Compliance With Government Standard;" and "False MERV Ratings."  (Docket Entry No. 14, Attachment 3 at 7, 11, 14, 18, ¶¶ 25-62).

Applying Insura, the Court concludes that 3M's complaint presented claims for false advertising and such claims are not covered by the Defendant's policy.

### A. Disparagement

Plaintiff cites paragraphs 17, 25, 28-31, 33, 63 and 65 in 3M's complaint as setting forth claims as disparagement claims.  The Restatement (Second) of Torts defines disparagement as follows:

> One who publishes a false statement harmful to the interest of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

Gibson Guitar Corp. v. Levine, No. 3:05-0240, 2005 WL 1799305, at *2 (M.D. Tenn. July 27, 2005) (quoting Section 623A, "Liability for Publication of Injurious Falsehood-General Principle") (emphasis added).

Yet, the cited portions of 3M's complaint allege that Clarcor made false statements about Clarcor's product. Such factual allegations do not state a cognizable claim for disparagement. See Duramax Marine LLC v. Travelers Indem. Co. of Ill., No. 03-3500, 2004 WL 1759146, at *1 (6th Cir. Aug. 3, 2004) (holding that the underlying complaint did not contain a claim for disparagement since it only alleged that the insured made "false statements about [the insured's] own products - not that [the insured] made false statements about [the underlying plaintiff's] products."); see also Gibson Guitar, 2005 WL 1799305, at *2 (finding no disparaging statement where defendant was only promoting its product).

## B. Use of Another's Advertising Idea

Plaintiff next cites paragraphs 17, 25, 29-31, and 33-34 of 3M's complaint as arguably stating a claim for the "use of another's advertising idea in your 'advertisement.'" Specifically, Plaintiff contends that 3M's allegations of Clarcor's packaging and advertising ideas, such as the color scheme and numerical rating system, were 3M's ideas. When read in conjunction with 3M's remaining allegations in the cited paragraphs, Plaintiff contends that a claim covered by Defendant's policy, is stated. Defendant argues that Plaintiff recharacterizes 3M's claims as involving an "advertising idea" by selectively choosing words and phrases from various sections of 3M's complaint. Defendant contends that the mere fact that 3M's complaint alleges facts establishing Clarcor's false comparative advertising - in the context of a false advertising count - is insufficient to constitute a claim for wrongful use of another's advertising idea.

18

An "Advertising idea" has been defined as "an idea for advertising that is 'novel and new,' and 'definite and concrete,' such that it is capable of being identified as having been created by one party and stolen or appropriated by another." Sorbee Intern. Ltd. v. Chubb Custom Ins. Co., 735 A.2d 712, 714 (Pa. Super. Ct. 1999).

3M's complaint reveals that the factual allegations in paragraphs 17, 25, 29-31, and 33-34 state a claim for false advertising and do not fall under the policy's coverage for the use of an "advertising idea." 3M did not allege a trademark in its color scheme and its rating system nor that its color scheme coupled with its rating system, were wrongfully taken. Purple is not shown to be a novel color, and Clarcor used its own rating system–"RPF"–not 3M's "MPR." The gravamen of 3M's complaint was that Clarcor's color scheme and rating system reinforces Clarcor's false statements on its packaging that its Purolator purple filter can remove 97% of all particles while the 3M filter can remove only 90% of large particles, Clarcor's Purolator red filter has an overall filtration efficiency of 95% and testing of both brands by independent laboratories conclusively proved that Clarcor's Purolator's filters are not superior to 3M's. (Docket Entry No. 14, Attachment 3 at ¶¶ 28, 32-33). In these circumstances, the Court concludes that 3M's action did not involve an "advertising idea."

Plaintiff next cites its settlement agreement with 3M as evidence "that the preponderance of the dispute between 3M and Clarcor was related to the Clarcor's alleged 'copying' of various 3M ideas in Clarcor's advertisements, all of which constituted 'personal and advertising injury'" under the policy. Under Tennessee law, "[t]he pleading test for determination of the duty to defend is based exclusively on the facts as alleged rather than on the facts as they actually are." Torpoco, 879

S.W.2d at 835. Based upon the Court's review, 3M's complaint involved false advertising. Accordingly, Plaintiff's contentions on these issues are without merit.

## C. Trade Dress or Slogan Infringement

Plaintiff next cites paragraphs 17, 25, 29-31, and 33-34 in 3M's complaint as claims and allegations that could arguably state a claim for trade dress or slogan infringement. Defendant responds that 3M's complaint does not allege claims for "trade dress" or "slogan" infringement, nor are the terms "trade dress," "slogan" and "infringement" mentioned.

"To sustain a claim for trade dress infringement, a plaintiff must prove that the allegedly misappropriated features of the dress (1) are inherently distinctive or have acquired distinction by virtue of secondary meaning in the marketplace; (2) are not functional; and (3) create a likelihood of confusion as to the source of defendant's goods." Windmill Corp. v. Kelly Foods Corp., Nos. 94-5874, 94-5890, 95-5137, 1996 WL 33251, at *3 (6th Cir. Jan. 26, 1996).

3M's complaint does not allege any of these elements of a trade dress claim nor that 3M had a slogan that Clarcor infringed. In Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 618-19 (2d Cir. 2001), referring to Nike's "Just Do It" and American Express's "Don't Leave Home Without Us" as slogans to promote house marks, the Second Circuit stated, "[T]he relevant federal cases indicate that 'trademarked slogans' are phrases used to *promote or advertise* a house mark or product mark, in contradistinction to the house or product mark itself." (emphasis in original). The cited paragraphs of 3M's complaint involve only Clarcor's "false and misleading claims that Purolator filters perform equally to, if not better than, 3M's Filtrete filters." Accordingly, the Court concludes that Plaintiff's contention as to trade dress or slogan infringement is without merit.

## D. Failure to Conform Exclusion

Defendant's failure to conform exclusion provision precludes coverage for "'Personal and advertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'" In Defendant's view, 3M's complaint is excluded under the policy's failure to conform exclusion because Plaintiff's product allegedly did not conform to its advertisement. Plaintiff contends that the exclusion does not preclude Defendant's duty to defend because some of the allegations in 3M's complaint fall outside the scope of the exclusion and the failure to conform exclusion only applies to an actual failure to conform, not alleged failures. Plaintiff cites 3M's allegations about Clarcor's use of its color scheme and numerical rating system that are not "statement[s] of quality or performance" and that Clarcor's advertisements left consumers with the impression that Clarcor's Purolator filters were as good or better than 3M's. In any event, Plaintiff contends that such "performance statements" do not trigger the exclusion because exclusion g requires actual failure of Clarcor's filters to conform to its statements, not alleged failure.

The term "statement" is defined as "an opinion, comment, or message conveyed indirectly usually by nonverbal means <monuments are *statements* in form and space>." <u>See</u> http://www.merriam-webster.com/dictionary/statement (emphasis in original). Assuming that Plaintiff established that 3M's complaint alleged a "personal and advertising injury" offense, as stated previously, "the pleading test for determination of the duty to defend is based exclusively on the facts as alleged rather than on the facts as they actually are." <u>Torpoco</u>, 879 S.W.2d at 835.

In <u>Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.</u>, 500 F.3d 640 (7th Cir. 2007), a series of class actions against Del Monte asserted claims of fraud and violations of the antitrust laws arising out of Del Monte's marketing of its pineapples. <u>Id</u>. at 642. Each complaint

alleged that Del Monte knowingly submitted fraudulent patent applications, knowingly sent false letters to competitors regarding its patent rights, and knowingly engaged in fraudulent patent litigation. Id. at 643. The Seventh Circuit stated:

> Del Monte does not point to a single factual allegation that is not a part of a specific allegation of fraud and that does not use the language of the "paradigm of intentional conduct." The class plaintiffs can prevail only if they are able to prove that the underlying statements made by Del Monte were knowingly false. Therefore, the complaints at issue in this case fall squarely within the exclusion in the policy for personal or advertising injury if the injury arose out of statements made by the insured (or at its direction) with knowledge of falsity.

Id. at 645. There, the Court held:

> The allegations against Del Monte in the underlying complaints are specific. They depend on a showing of knowledge of falsity as part of an underlying fraudulent scheme in order to obtain relief. Del Monte believes that Transportation still has the duty to defend them because, as it claimed at oral argument, the statements Del Monte made were true. But this misses the point. Whether there is a duty to defend depends on the complaint, not on the insured's belief that the complaint is mistaken. If Del Monte's statements prove to be true, it will not be liable in the class actions. It cannot be the case that the policy exclusion applies only when the insured concedes that it has engaged in false or fraudulent acts. The allegations rule, and under these allegations, Transportation had no duty to furnish a defense for Del Monte.

Id. at 646-47.

Similarly, as to the paragraphs of 3M's complaint (paragraphs 17, 25, 28-31, 33-34, 63 and 65) cited by Plaintiff as stating a claim, neither d, f, nor g of Defendant's policy covers 3M's false and misleading claims against Clarcor. Accordingly, the Court concludes that exclusion g in the Defendant's policy applies to bar coverage. Therefore, Plaintiff's contention is without merit.

### E. Duty to Indemnify

Finally, Defendant's policy provides, "We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this

insurance applies." Because Plaintiff failed to prove damages as a result of "personal and advertising injury," the Court concludes that Plaintiff's indemnity claim also fails.

For these reasons, the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 28) should be granted and Plaintiff's motion for partial summary judgment (Docket Entry No. 14) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the _16_ day of December, 2010.


WILLIAM J. HAYNES, JR.
United States District Judge